FILED

2013 MAY 28 PM 1:28

U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| STEVEN S. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO: |
| ) | |
| ALCOA, INC. ) | 4:13CV036 |
| ) | |
| Defendant. ) | |

# COMPLAINT AND DEMAND FOR JURY TRIAL

## I. NATURE OF THE CASE

1. This is an action brought by Plaintiff, Steven S. Smith ("Smith"), by counsel, against Defendant, Alcoa, Inc., for their discriminatory actions against him based on his real and/or perceived disability, in violation of the American with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 et. seq.

## II. PARTIES

2. Smith, at all times relevant to this litigation, resided within the geographical boundaries of the Southern District of Indiana.

3. Defendant is a corporation which, at all times relevant to this action, was located and conducted business within the geographical environs of the Northern District of Indiana.

## III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; and 42 U.S.C. § 12117.

5. Defendant is an "employer" as defined by 42 U.S.C. § 12111(5)(A).

6. Smith is a qualified individual with a disability as that term is defined by the ADA, 42 U.S.C. § 12102(2)(c). At all relevant times, Defendant had knowledge of Smith's disability and/or it regarded Smith as being disabled.

7. Smith exhausted his administrative remedies by timely filing a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission, claiming discrimination based on disability, and files this complaint within ninety (90) days of receipt of his Notice of Right to Sue.

8. All events, transactions, and occurrences concerning this case having arisen in the geographical environs of the Northern District of Indiana, venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

9. Smith, a fifty (50) year old male, was hired by the Defendant at the Lafayette Extrusion Facility Operation on or about October 13, 1997. Most recently, Smith worked as a General Mechanic.

10. During all relevant time periods, Smith met or exceeded Defendant's legitimate performance expectations.

11. Smith suffers from chronic obstructive pulmonary disease ('COPD") which substantially limits several major life activities, including, but not limited to, breathing and ambulating. Defendant was aware of Smith's disability.

12. Smith's work environment with Defendant can exacerbate his disability as his condition is negatively affected by exposure to high heat or smoke.

13. In or about June 2010, Smith was moved to the Crane Shop, an area with air conditioning and free of smoke.

14. On or about June 15, 2011, Defendant transferred Smith from his position as a Qualified Crane Inspector to a position in Unit 2. Unit 2 has a higher concentration of smoke and vapors and is not air conditioned. Smith asked Carol Paul ("Paul"), General Supervisor of Maintenance, to remain in the Crane Shop, and informed Paul that the move to Unit 2 would exacerbate his condition. Paul refused to allow Smith to remain the Crane Shop, and he was transferred on or about June 17, 2011. Smith had previously been allowed to remain in the Crane Shop when Nelson Sorrenson ("Sorrenson") issued Smith a reprieve after Defendant attempted to move him to Unit 2 approximately forty-five (45) days earlier.

15. On or about June 26, 2011, Smith was admitted to the Arnett Emergency Room due to severe exacerbation of his COPD. He was taken off work for the following week.

16. Smith was given restrictions by his primary care physician, including no exposure to heat greater than eight (80) degrees for more than one hour at a time and no exposure to smoke.

17. On or about July 3, 2011, Smith met with Defendant's company doctor, Dr. Carl Griffin. Dr. Griffin informed Smith that the head of Unit 2, Sorrenson, could not accommodate the restrictions. Dr. Griffin placed Smith on sick leave until the restrictions could be lifted.

18. In or about August 2011, Smith met with Frank Rodriguez, HR, Dr. Griffin, and his Union representative to discuss a reasonable accommodation. Rodriguez refused to discuss accommodations until Smith allowed Dr. Griffin to speak with his primary care physician regarding Smith's condition. Smith objected to providing unrestricted access to his primary care physician, but offered to allow the Defendant to submit written questions to his physician regarding his condition or to speak with his physician as long as he was present for the conversation.

19. In the following months, Smith and the Defendant exchanged letters regarding Smith's consent to speak with his primary care physician. Defendant refused to put its questions to writing or allow Smith to be present during any conversation between Dr. Griffin and Smith's primary care physician.

20. In or about November 2011, Smith's primary care physician lifted his restrictions, so that he could return to work at Unit 2.

21. Upon his return, Smith again requested a reasonable accommodation from Defendant on or about November 28, 2011.

22. On or about November 29, Smith was summoned to Dr. Griffin's office. Aaron Elder ("Elder") Union Steward, was also present. Smith requested a reasonable accommodation of being in an environment free from smoke and high heat, but Dr. Griffin told Smith he could not assign accommodations because he had no restrictions. Dr. Griffin also sought to get more information from Smith's primary care physician.

23. On or about December 8, 2011, Dr. Griffin again spoke with Smith and threatened not to return Smith to duty if Smith did not sign the medical consent form allowing Dr. Griffin to speak to the primary care physician. Smith did so reluctantly.

24. On or about December 20, 2011, Dr. Griffin imposed restrictions on Smith including:

- No work where routine use of respiratory personal protective equipment (PPE) is needed;
- Make an appropriate negative pressure respirator (NPR) available to the employee if there is an expectation of probably heavy smoke or dust,

when use of the PPE would allow egress from the area and minimize his exposure to the air contaminant.

- May work in a job where moderate, but not heavy, level of exertion is expected;
- May need brief break periods, not likely to exceed five minutes per hour, during levels of more consistent exertion.

25. Following these implementation of these restrictions, Defendant failed to accommodate Smith. It moved Smith to Unit 1, where the concentration of dust was the highest. Smith went back out on medical leave in February 2012.

26. On or about February 28, 2012, Smith presented a note from his primary care physician stating that he should not be exposed to heats greater than 80 degrees for more than an hour at a time, and that Smith should avoid exposure to smoke. Smith's primary care physician also added that Smith needed a 15-30 minute break every hour.

27. Defendant stated that it would not accommodate Smith's restrictions. At this time, Smith could perform the Qualified Crane Inspector position he worked in prior to June 17, 2011 with or without the given restriction.

28. On or about March 6, 2012, Smith met with Pam Whitton, HR Manager, Bob Tanner, HR Generalist, Frank Bartleman, Maintenance Manager, and Eldert, his Union Steward, to discuss Smith's accommodations. Smith attempted to engage in the interactive process and presented a number of possible accommodations. Defendant refused each of Smith's suggestions and failed to offer any of its own.

5

29. By refusing to grant Smith a reasonable accommodation and failing to engage in the interactive process, Defendant intentional and willfully discriminated against Smith on the basis of his disability.

## V. LEGAL ALLEGATIONS

### COUNT I-VIOLATION OF THE ADA - DISCRIMINATION

30. Paragraphs one (1) through twenty-nine (29) of Smith's Complaint are hereby incorporated.

31. Defendant violated Smith's rights as protected by the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. by refusing to grant a reasonable accommodation to Smith and failed to engage in the interactive process.

32. Defendant's actions were intentional, willful and in reckless disregard of Smith's rights as protected by the ADA.

33. Smith has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Steven S. Smith, by counsel, respectfully requests that this Court find for Plaintiff and order Defendant to:

1. Grant Plaintiff a reasonable accommodation for his disability, as required by the Americans with Disabilities Act.

2. Pay Plaintiff's lost wages and benefits;

3. Pay to Plaintiff compensatory damages, including lost future earning capacity and punitive damages;

4. Pay to Plaintiff pre- and post-judgment interest;

5. Pay Plaintiff's costs and attorney fees incurred in litigating this action; and,

6. Provide any further equitable relief this Court sees fit to grant.

Respectfully submitted,

*/s/ Lauren E. Berger*

Andrew Dutkanych (#23551-49)
Lauren E. Berger (#29826-19)
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email:     ad@bdlegal.com
           lberger@bdlegal.com

*Attorney for Plaintiff, Steven S. Smith*

## DEMAND FOR JURY TRIAL

The Plaintiff, Steven S. Smith, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

*/s/ Lauren E. Berger*
Andrew Dutkanych (#23551-49)
Lauren E. Berger (#29826-19)
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana 47708
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email:    ad@bdlegal.com
          lberger@bdlegal.com

*Attorney for Plaintiff, Steven S. Smith*